IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MAGUIRE INSURANCE AGENCY, INC. D/B/A PHILADELPHIA INSURANCE COMPANIES,<br>    Plaintiff,<br><br>v.<br><br>AMYNTA AGENCY, INC., PDP GROUP, INC. D/B/A AMYNTA SURETY SOLUTIONS, STEPHAN MAY, and CHRISTOPHER SPICHER,<br>    Defendants. | CIVIL ACTION<br>NO. 21-4664 |

**<u>MEMORANDUM</u>**

Plaintiff Maguire Insurance Agency ("Philadelphia Insurance") is a nationwide provider of commercial insurance and surety bonds. Defendants Stephan May and Christopher Spicher (collectively, the "Individual Defendants") worked for Philadelphia Insurance in the company's commercial surety division from 2015 to 2021, when they left Plaintiff's employ to work for Defendants Amynta Insurance Agency and PDP Group (collectively, "Amynta"). At the same time, six other Philadelphia Insurance employees also left to work for Amynta. On October 25, 2021, Plaintiff filed its Complaint, alleging that May and Spicher breached their fiduciary duties and duties of loyalty to Philadelphia Insurance, as well as their respective Confidentiality and Noncompetition Agreements. Plaintiff also alleges that Amynta tortiously interfered with May and Spicher's Confidentiality and Noncompetition Agreements, aided and abetted the Individual Defendants' alleged breaches, and engaged in unfair competition.

On November 5, 2021, Plaintiff filed a motion for preliminary injunction, which remains pending. On November 10, 2021, the Individual Defendants filed a Motion to Stay Judicial Proceedings Pending Arbitration (ECF No. 19). On November 16, 2021, the Individual

Defendants filed a Motion to Compel Arbitration or, in the alternative, to Dismiss for Improper Venue (ECF No. 26), and Defendant Amynta filed a Motion to Dismiss for Improper Venue (ECF No. 27). Plaintiff filed its Responses in Opposition to all three motions (*see* ECF Nos. 29, 31, 32). On December 13, 2021, I denied all three motions (ECF No. 35). Upon further consideration, I now vacate that Order and consider only Defendants' Motions to Dismiss for Improper Venue.

**I.      BACKGROUND**

Philadelphia Insurance markets and underwrites commercial property insurance and surety bonds. Compl. ¶ 23. Philadelphia Insurance's Commercial Surety Division is responsible for underwriting surety bonds for commercial clients. *Id.* ¶ 26. The Commercial Surety Division is made up of six teams, each of which is responsible for a specific region of the United States. *Id.* ¶ 27.

In early 2015, Philadelphia Insurance hired Stephan May to be their Vice President of Commercial Surety and to lead the regional team responsible for the North West, Rocky Mountain, North Central, Central, and Ohio Valley West territories. *Id.* ¶ 28–30. At the same time, Philadelphia Insurance also hired Christopher Spicher as a Senior Specialty Underwriter on May's team; Spicher was later promoted to Surety Underwriting Manager. *Id.* ¶ 31–32. May and Spicher worked out of Philadelphia Insurance's Seattle, Washington office. ECF No. 26 at 2; ECF No. 31 at 13.

As part of their onboarding process with Philadelphia Insurance, May and Spicher signed individual—but identical—Confidentiality and Noncompetition Agreements (collectively, the "Noncompete Agreements"). Compl. Exs. 1–2. May and Spicher also signed (1) Acknowledgments that they had received the Philadelphia Insurance Employees' Handbook, and

(2) identical Mutual Dispute Resolution Agreements (collectively, the "Arbitration Agreements"), which reference and incorporate the rules and procedures of Philadelphia Insurance's Dispute Resolution Program ("Arbitration Program"). *Id.* Exs. 4–5; ECF Nos. 29-4, 29-5. May signed his Noncompete Agreement and his Mutual Dispute Resolution Agreement on February 12, 2015. Compl. Ex. 1; ECF No. 26-3. Spicher signed his Noncompete Agreement and his Mutual Dispute Resolution Agreement on February 23, 2015. Compl. Ex. 2; ECF No. 26-3.

Both agreements, as well as the Employee Handbook, provide procedures governing disputes between Philadelphia Insurance and its current and former employees.

First, the Noncompete Agreements contain a choice of law and forum-selection clause:

> APPLICABLE LAW AND VENUE – The validity, construction, interpretation or performance of this Addendum shall be governed by the laws of the Commonwealth of Pennsylvania and the parties hereby irrevocably consent to the jurisdiction of the United States District Court for the Eastern District of Pennsylvania, or if subject matter cannot be obtained in the District Court, the Court of Common Pleas in Philadelphia County, PA.

Noncompete Agreements ¶ 10.

Second, the Philadelphia Insurance Employee Handbook introduces the Arbitration Program: "Effective 1-1-2015 [Philadelphia Insurance] has implemented an Arbitration and Waiver of Collective Action Program (the Arbitration Program) for all employment-related legal disputes. Please refer to the Program details and corresponding Program rules for more information." Compl. Ex. 3 at 2.

And third, the Arbitration Program—incorporated into the Arbitration Agreements signed by May and Spicher—provides two forum-selection clauses. All parties concede that the Arbitration Program and Arbitration Agreements are valid. *See* ECF No. 26-2 at 2; ECF No. 29 at 8–9. The Program provides that arbitration of claims falling within the scope of the agreement "shall take place in the city where the employee is or was employed by [Philadelphia

Insurance]." Arbitration Program 3. The Program also provides a forum-selection clause that governs when employment-based claims are non-arbitrable: "[i]f any claim is found not to be subject to this Program and the arbitration procedure, it must be brought in the federal or state court which is closest to the site at which employee was employed by [Philadelphia Insurance] and which has jurisdiction over the matter." *Id.* As an example, equitable claims relating to interpretation or enforcement of Confidentiality and Noncompetition Agreements are non-arbitrable:

> Unfair Competition Claims Excluded - . . . [W]here an employee has entered into a written confidentiality, intellectual property, nonsolicitation or noncompetition agreement with [Philadelphia Insurance], the following claims for equitable relief—including, without limitation, claims for declaratory or injunctive relief—**shall not be subject to arbitration, but may be resolved in court:** (1) claims to interpret, apply or enforce the confidentiality, intellectual property, nonsolicitation or noncompetition provisions of the agreement(s) at issue; or (2) claims regarding the possession, use, dissemination, disclosure of or reliance on information alleged to be confidential, including common law or statutory claims for unfair competition and misappropriation of trade secrets.

*Id.* 2 (emphasis added).

May and Spicher worked for Philadelphia Insurance for over six years. Compl. ¶ 4. On October 8, 2021, May announced his resignation effective October 22, 2021. *Id.* On October 11, 2021, Spicher announced his resignation, also effective October 22, 2021. *Id.* Between October 8 and October 11, six other Philadelphia Insurance employees also resigned. *Id.* ¶ 46. All eight former Philadelphia Insurance employees—May and his entire team, including Spicher, plus two additional members of the Commercial Surety Division—joined Amynta, another insurance provider seeking to expand its commercial surety services. *Id.*

On October 22, 2021, Philadelphia Insurance informed May and Spicher that they had been terminated for cause. *Id.* ¶ 5. Three days later, Philadelphia Insurance filed the instant suit.

4

On November 16, 2021, the Defendants filed the pending Motions to Dismiss for Improper Venue (ECF Nos. 26, 27).

## II. DISCUSSION[1]

### a. Considering Defendants' Motions to Dismiss for Improper Venue as Motions to Transfer

Both the Individual Defendants and Amynta have styled their Motions at ECF No. 26 and ECF No. 27 as Motions to Dismiss for Improper Venue rather than Motions to Transfer to the federal district dictated by the Arbitration Program (the Western District of Washington).

The filing of a Rule 12(b)(6) motion to dismiss based on a forum-selection clause does not preclude a court from *sua sponte* considering whether to transfer the case to another district pursuant to 28 U.S.C. § 1404(a). *Salovaara v. Jackson Nat'l Life Ins. Co.*, 246 F.3d 289, 299 (2001). In general, it is preferable to transfer a case to an appropriate federal forum rather than dismiss it. *Id.* This principle is particularly important here given the parties' pending motions for preliminary injunction and to stay proceedings. As such, I consider Defendants' venue-based motions at ECF No. 26 and ECF No. 27 as Motions to Transfer to the Western District of Washington, the site of May and Spicher's work for Philadelphia Insurance, as dictated by the Arbitration Program.

---

[1] The Individual Defendants' Motion to Dismiss for Improper Venue at ECF No. 26 is styled, in the alternative, as a Motion to Compel Arbitration and Stay Proceedings. Because I will transfer this action pursuant to the analysis below, it is unnecessary to consider the arbitration-related arguments contained in the Motion at ECF No. 26. This Explanation and Order resolves the Motion at ECF No. 26 solely as a Motion to Dismiss for Improper Venue.

      **b. The Motion to Transfer Standard**

The question of whether venue is proper is "generally governed by 28 U.S.C. § 1391." *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 55 (2013). However, venue is also proper if the parties consent to venue in a forum-selection clause. *Polytek Dev. Corp. v. 'Doc' Johnson Enterprises*, 532 F. Supp. 3d 243, 251 (E.D. Pa. 2021) (Younge, J.); *Sept. Properties LLC v. Millionaire Gallery, Inc.*, No. CV 18-988, 2018 WL 4466066, at *2 (E.D. Pa. Sept. 18, 2018) (Brody, J.); *Robertson v. Pfizer Ret. Comm.*, No. 18-0246, 2018 WL 3618248, at *6 (E.D. Pa. July 27, 2018) (Quiñones Alejandro, J.); *Healthcare Servs. Grp., Inc. v. Skyline Servs. Grp.*, No. 17-2703, 2018 WL 637773, at *5 (E.D. Pa. Jan. 30, 2018) (Slomsky, J.).

Even when a plaintiff's choice of venue is proper, a district court may transfer the civil action to another district. Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Traditionally, a court confronting a motion to transfer conducts a balancing test, considering "the private and public interests protected by the language of § 1404(a)." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). Although there is no definitive list of factors to consider, private interests often weighed include "[P]laintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses . . . ; and the location of books and records . . . ." *Id.* (internal citations omitted). Public interests that have been considered include "the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty . . . resulting from court

congestion; the local interest in deciding local controversies . . . ; public policies . . . ; and the familiarity of the trial judge with the applicable state law in diversity cases." *Id.* at 879–80 (internal citations omitted).

### c. The Impact of Forum-Selection Clauses on the § 1404(a) Standard

The presence of a controlling forum-selection clause is highly instructive but not dispositive to a district court's analysis of a motion to transfer under § 1404(a). The impact of a forum-selection clause on a district court's § 1404(a) analysis depends in part on the nature of the clause.

Forum-selection clauses are either mandatory or permissive. *See Collins On behalf of herself v. Mary Kay, Inc.*, 874 F.3d 176, 185 n.8 (3d Cir. 2017) (citing *Phillips v. Audio Active Ltd.*, 494 F. 3d 378, 383–84 (2d Cir. 2007)) (noting a lack of dispute as to whether agreements' forum-selection clauses "were mandatory in effect . . . rather than just permissive."); *Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 758 n.7 (3d Cir. 1973) (distinguishing between forum-selection clauses that mandate "exclusive jurisdiction" and those that "merely consent" to jurisdiction). "A permissive clause authorizes jurisdiction in a designated forum but does not prohibit litigation elsewhere, whereas a mandatory clause dictates an exclusive forum for litigation under the contract." *Agri-Marketing, Inc. v. ProTerra Sols., LLC*, No. 5:17-cv-00627, 2018 WL 1444167, at *3 (E.D. Pa. Mar. 22, 2018) (Leeson, J.) (citing *Dawes v. Publish Am. LLLP*, 563 F. App'x 117, 118 (3d Cir. 2014)).

Where a forum-selection clause involves the consent to jurisdiction in a named forum but provides no language indicating that jurisdiction is exclusive, the forum-selection clause is merely permissive. *See Ace Am. Ins. Co. v. First Call Env't, LLC*, No. 5:21-CV-02331-JMG, 2021 WL 4037459, at *3 (E.D. Pa. Sept. 3, 2021) (Gallagher, J.) (classifying a clause as

permissive where there is no mandatory and exclusive language); *Samuel T. Freeman & Co. v. Hiam*, No. CIV.A. 12-1387, 2012 WL 2120474, at *8 (E.D. Pa. June 11, 2012) (Buckwalter, J.) ("It is well-established that clauses that merely empower a court to hear litigation and in effect waive any objection to personal jurisdiction in that court—commonly referred to as 'consent to jurisdiction' clauses—are 'permissive' in that they allow parties to air any dispute in a specific court without requiring them to do so.").

In contrast, when a forum-selection clause contains exclusive or obligatory language, it is considered mandatory. *See, e.g.*, *Mato v. Window World, Inc.*, No. CIV.A. 10-7617, 2011 WL 710473, at *4 (E.D. Pa. Feb. 28, 2011) (Stengel, J.) (finding that forum-selection clause stating that North Carolina state or federal court "**shall** have jurisdiction" was a mandatory clause (emphasis added)); *Campanini v. Studsvik, Inc.*, No. CIV.A. 08-5910, 2009 WL 926975, at *4 (E.D. Pa. Apr. 6, 2009) (Schiller, J.) (finding that a forum-selection clause stating that "venue **shall** be any court of competent jurisdiction in Knoxville" was a mandatory clause (emphasis added)); *see also Decoration Design Sols., Inc. v. Amcor Rigid Plastic USA, Inc.*, No. CV 20-2667, 2020 WL 6482696, at *8 (D.N.J. Nov. 4, 2020) (Kugler, J.) ("Words of exclusion or authority, such as 'exclusive,' 'sole,' 'shall,' 'only,' or 'must' are indicia of a mandatory forum-selection clause.").

When a mandatory forum-selection clause applies to a dispute, the district court must undertake a modified § 1404(a) transfer test. A mandatory forum-selection clause modifies the traditional balancing test in three ways:

> First, no weight is given to the plaintiff's choice of forum. Second, the court does not consider arguments about the parties' private interests. Instead, a district court may consider arguments about public-interest factors only. Third, when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect

public-interest considerations. The Supreme Court recognized that because the public interest factors—the only factors that remain to be balanced—will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases.

*In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 57–58 (3d Cir. 2018) (citing *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 63–64 (2013) (original quotation marks and citations omitted)).

Where the contract containing the mandatory forum-selection clause was not signed by all defendants, the transfer analysis is further altered; the private and public interests of the non-signatory parties must be considered as in a traditional § 1404(a) analysis. *In re Howmedica Osteonics Corp.*, 867 F.3d 390, 404 (3d Cir. 2017) (citing *Jumara*, 55 F.3d at 879–80). However, if the forum-selection analysis (applied to signatory parties) and the traditional § 1404(a) analysis (applied to non-signatory parties) "point to the same forum, then the court should allow the case to proceed in that forum . . . and the transfer inquiry ends there." *Id.*

### d. Arguments For and Against Transfer

The parties to this dispute make compelling arguments for and against transfer. There are two relevant forum-selection clauses at issue. The Noncompete Agreements provide that "the parties hereby irrevocably consent to the jurisdiction of the United States District Court for the Eastern District of Pennsylvania . . . ." Noncompete Agreements ¶ 10. The Arbitration Program provides that "[i]f any claim is found not to be subject to this Program and the arbitration procedure, it must be brought in the federal or state court which is closest to the site at which employee was employed by [Philadelphia Insurance] and which has jurisdiction over the matter." Arbitration Program 3. Reconciliation of these forum-selection clauses is a complex task.

The Individual Defendants argue that the forum-selection clause included under "Procedure for Arbitration" of the Arbitration Program controls and that the instant non-

9

arbitrable claims belong in Seattle. The Individual Defendants assert that the Arbitration Program forum-selection clause is clear and unambiguous, while the Noncompete Agreement forum-selection clause is ambiguous and thus should be construed against the drafter, Philadelphia Insurance. ECF No. 26-2 at 14–15. The Individual Defendants point to the commanding, obligatory language of the Arbitration Program clause—which provides that non-arbitrable claims such as the motion for injunction currently pending before this Court "**must** be brought in the federal or state court which is closest to the site at which employee was employed." *Id.* at 14 (emphasis in original). Because the Individual Defendants were employed in Seattle, they argue, non-arbitrable claims must be brought in federal (or state) court in Seattle. *Id.* at 13–14. The Individual Defendants assert that May and Spicher's "consent" to the jurisdiction of this Court does not preclude proper venue elsewhere.[2] *Id.* at 14.

      Plaintiff argues against transfer, asserting that the Individual Defendants consented to jurisdiction and venue in the Eastern District of Pennsylvania when they signed the Noncompete Agreements and that the Noncompete Agreement's forum-selection clause controls. ECF No. 31 at 9. Plaintiff suggests that the Individual Defendants' proposed reading and reconciliation of the two forum-selection clauses nullifies the Noncompete Agreements' "Applicable Law and Venue" clause in contravention of Pennsylvania contract law. *Id.* at 11–12.

---

[2] Amynta argues that Plaintiff's choice of venue should not be given deference "[b]ecause all of the alleged events took place outside of Pennsylvania and all of the relevant actors and potential witnesses are outside of Pennsylvania." ECF No. 27-2 at 5. Amynta's argument for improper venue differs from the argument presented by the Individual Defendants in their venue motion because Amynta did not sign the Noncompete Agreements consenting to venue in this Court. As non-signatories to both agreements at issue, Amynta's interests are considered in the Court's transfer analysis, *infra*.

### e. Harmonizing the Venue Provisions

Plaintiff is correct that, in considering Defendants' Motions to Transfer and the question of which forum-selection clause controls, the Court's goal must be to harmonize the two forum-selection provisions.

The Court's construction of these provisions is determined by Pennsylvania law.[3] The parties do not dispute that the Individual Defendants signed the Noncompete Agreements and the Arbitration Agreements on the same day. "Under Pennsylvania contract law, where several instruments are made as part of one transaction[,] they will be read together, and each will be construed with reference to the other; and this is so although the instruments may have been executed at different times and do not in terms refer to each other." *Sharp v. Castro*, No. 1121 EDA 2019, 2020 WL 1068235, at *6 (Pa. Super. Ct. Mar. 5, 2020) (citing *Huegel v. Mifflin Const. Co.*, 796 A.2d 350, 354-55 (Pa. Super. 2002); *see also Sanford Inv. Co. v. Ahlstrom Mach. Holdings, Inc.*, 198 F.3d 415, 421 (3d Cir. 1999) (quoting *Western United Assurance Co. v. Hayden*, 64 F.3d 833, 842 (3d Cir. 1995)) ("[T]wo or more writings are executed at the same time and involve the same transaction, they should be construed as a whole."). I must therefore consider the Noncompete Agreements and the Arbitration Agreements—and the Arbitration Program incorporated therein—as a single instrument.

Pennsylvania law also provides that individual contract provisions should not be read "in a manner which results in another portion being annulled." *U.S. Bank, Nat'l Ass'n v. Rosenberg*, No. CV 12-723, 2012 WL 13018263, at *2 (E.D. Pa. June 12, 2012) (Rufe, J.) (quoting *Lesko v. Frankford Hosp.-Bucks Cnty.*, 15 A.3d 337, 343 (Pa. 2011)).

---

[3] I apply Pennsylvania law because the parties both cite to Pennsylvania law in interpreting these contracts. *See* ECF No. 26-2 at 13; ECF No. 31 at 8; *see also Williams v. BASF Catalysts LLC*, 765 F.3d 306, 316 (3d Cir. 2014) ("[P]arties may waive choice-of-law issues."). The Individual Defendants also note that, were Washington contract law to apply, the interpretive canons are the same. ECF No. 26-2 at 13 n.4.

Plaintiff is thus correct that the Court must read the relevant forum-selection clauses in such a way that they do not conflict. Defendants have the better argument, however, in emphasizing the important differences between the two clauses. In this dispute, two operative contracts contain two forum-selection clauses, one of which is mandatory while the other is permissive.

The Noncompete Agreement's forum-selection provision states that "the parties hereby irrevocably consent to the jurisdiction of the United States District Court for the Eastern District of Pennsylvania." Noncompete Agreements ¶ 10. This is the exact type of "consent to jurisdiction" clause which is treated as permissive in this district. *See Samuel T. Freeman & Co.*, 2012 WL 2120474, at *8 ("[C]onsent to jurisdiction' clauses—are 'permissive.'").

Conversely, the Arbitration Program states that non-arbitrable claims "**must** be brought in the federal or state court which is closest to the site at which employee was employed . . . ." Arbitration Program 3 (emphasis added). This is the same type of obligatory language that directs parties **and courts** as to the proper forum for disputes and is thus construed as a mandatory forum-selection clause. *See, e.g.*, *Mato*, 2011 WL 710473, at *4 (finding that forum-selection clause stating that a named district court "shall have jurisdiction" was a mandatory clause).

Disputes involving multiple forum-selection provisions are rare; disputes involving two forum-selection provisions, one of which is mandatory and one of which is permissive, are rarer still. But in decisions that address this precise issue,

> [v]irtually without exception, courts have found that the two forum-selection clauses do not conflict, and **courts have required lawsuits that are within the scope of the mandatory clause to be litigated in [the forum named therein]**, even if the permissive clause would otherwise permit them to be litigated in [a different forum]."

*Granite Re, Inc. v. N. Lines Contracting, Inc.*, 478 F. Supp. 3d 772, 779 (D. Minn. 2020) (emphasis added).

In *Partners of Massachusetts, LLC v. Fantasia*, the court confronted two forum-selection clauses: one clause in a restrictive covenant directing litigants to Massachusetts courts and a second clause in an asset purchase agreement directing litigants to New Jersey courts. No. 215CV07960KSHCLW, 2016 WL 7476355, at *3 (D.N.J. Dec. 29, 2016). The court determined that "[a]lthough the [asset purchase agreement] mandates that all claims arising out of or relating to it must be litigated in New Jersey, the restrictive covenant permits (but does not require) Partners to seek enforcement of the restrictive covenant in Massachusetts." *Id.* Citing *Dawes* for the proposition that a mandatory clause dictates—not only to the parties but also to the courts—an exclusive forum for litigation, the court found "that the mandatory forum-selection clause in the APA controls." *Id.* (citing *Dawes*, 563 Fed. App'x. 117, 118 (3d Cir. 2014)).

I find this analysis persuasive. This Court confront the same situation in the instant case, and I will resolve it in the same manner. The Noncompete Agreement clause is permissive; the Arbitration Program clause is mandatory. As such, the clauses do not conflict. Signatories to the Noncompete Agreements consent to venue in this Court, but that consent does not preclude proper venue elsewhere. Because the Arbitration Program's forum-selection clause is mandatory, and non-arbitrable equitable claims—such as the Motion for Preliminary Injunction pending before this Court—**must** be brought in a court nearest to the employees' work site, I find that the Arbitration Program's clause controls in this dispute.

13

### f. Transfer Analysis

Upon finding that a valid forum-selection clause applies to Defendants' Motions to Transfer, the Court's final step is to conduct a modified § 1404(a) transfer analysis. When a mandatory forum selection clause applies to a dispute in which there is a motion to transfer, the district court considers only public interest factors. *In re McGraw-Hill*, 909 F.3d at 57–58 (citing *Atl. Marine* 571 U.S. at 63–64). As such, a controlling forum selection clause is enforced in all but the most "unusual cases" where public interest factors have particularly significant weight. *Id.* Because Amynta was not a signatory to the Arbitration Agreements or to the Arbitration Program, the Court must also consider Amynta's private and public interests. *In re Howmedica*, 867 F.3d at 404 (citing *Jumara*, 55 F.3d at 879–80).

This is not one of *Atlantic Marine*'s "unusual cases" where public factors counsel against transfer and against enforcement of a controlling forum-selection clause. In this dispute, certain public interest factors are neutral on the matter of transfer: there is no suggestion that transfer would make collection of any judgment difficult, and the Individual Defendants and presumably most of the evidence are in Washington state.[4] One public interest factor clearly weighs in favor of transfer: this not a "local controversy." As Amynta notes in its motion, "Philadelphia Insurance has not alleged . . . that Amynta had any contact with May, Spicher, or any of the other departing employees in this judicial district . . . [a]ll of the departing employees, including May and Spicher, reside and work outside of Pennsylvania[, and a]ll of the conduct and activities alleged in the Complaint took place outside of Pennsylvania." ECF No. 2-72 at 5.

---

[4] The Court does recognize a potential public interest in judicial efficiency. Plaintiff's Motion for Preliminary Injunction has been pending before the Court since November. Unfortunately, Plaintiff brought this matter in the wrong district court. I find that this public interest factor does not weigh sufficiently against transfer to change the outcome here.

That Amynta is a non-signatory to the Arbitration Agreements is no barrier to transfer. *Howmedica* counsels that when, as here, all Defendants—signatories to the forum-selection clause and non-signatories alike—move for transfer to a single venue, the district court should allow the transfer to proceed. *See* 867 F.3d at 404 (concluding that if the forum-selection clause and the traditional § 1404(a) analysis applied to non-signatories "point to the same forum, then the court should allow the case to proceed in that forum . . . and the transfer inquiry ends there."). Amynta has moved for transfer alongside the Individual Defendants and argues that non-arbitrable claims should be before a court in Seattle. *See* ECF No. 27. The public factors considered in a transfer analysis are the same for Amynta as for the Individual Defendants, *supra*. The transfer is thus proper under § 1404(a).

### III. CONCLUSION

For the foregoing reasons, I consider Defendants May and Spicher's Motion to Dismiss for Improper Venue and Defendants Amynta Agency, Inc. and PDP Group, Inc.'s Motion to Dismiss for Improper Venue as Motions to Transfer, and I will grant both motions. Plaintiff's Motion for Preliminary Injunction (ECF No. 8) and Defendants Stephan May and Christopher Spicher's Motion to Stay (ECF No. 19) remain ripe for consideration upon transfer.

                                                                                    _s/ANITA B. BRODY, J.__
                                                                                    ANITA B. BRODY, J.